# United States District Court

SOUTHERN DISTRICT OF CALIFORNIA

FILED
2007 OCT 29  PM 3:59

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

In the Matter of the Search of

**1202 Borden Rd. # 110
Escondido, CA 92026**

APPLICATION AND AFFIDAVIT FOR
SEARCH WARRANT

CASE NUMBER: **'07 MJ 2547**

I, Matthew W. Beals, being duly sworn depose and say:

I am a Special Agent of the Alcohol, Tobacco, Firearms, and Explosives and have reason to believe that ☐ on the person of or ☒ on the premises known as

**1202 Borden Rd., # 110
Escondido, CA 92026, and any vehicles associated therewith,**

in the Southern District of California there is now concealed a certain person or property, namely

The items specified in Attachment B

Which is fruits, evidence, and instrumentalities of crimes against the United States,

Concerning a violation of: Title 18, United States Code, Section 922(a)(1)(A), dealing firearms without a license. The facts to support a finding of probable cause are as follows:

See Attached Affidavit – continued on the attached sheet and made a part thereof

Signature of Affiant

_____
Special Agent Matthew W. Beals
Alcohol, Tobacco, Firearms, and Explosives

Sworn to before me, and subscribed in my presence

At San Diego, California on 10/29/07 (Date/Time)
3:45pm.

_____
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTIONS OF LOCATION TO BE SEARCHED

**The Premises**

The Premises of Javier GUILLEN
Address: 1202 Borden Road, Space 110, including all outbuildings and appurtenances thereto, in the City of Escondido, California 92026, the County of San Diego, within the Southern District of California

**The Premises' Physical Description**

Stories: single
Construction type: mobile home
Color: green

The residence is located in the Lake Bernardo Mobile Estates in Escondido, California; 'SP110' is on the curb in front of GUILLEN's residence in black paint.

**Vehicles**

-One 1996 Isuzu Trooper, CA license plate 4NVN788, registered to Javier Guillen at the above address.

-One 2003 Dodge pickup truck, CA license plate 7B27850, registered to Javier Guillen at the above address.

## ATTACHMENT B
## DESCRIPTION OF EVIDENCE TO BE SEIZED

### FIREARMS

Any and all firearms or ammunition located on the premises or within any of the vehicles/vessels on the premises including all areas to be searched. Other items pertaining to the possession of firearms, which include gun cases, magazines, holsters, spare parts and photographs of firearms or of persons in possession of firearms.

### RECORDS/DOCUMENTS

Any and all books, records, documents or photographs, whether contained on paper or digital media, that pertain to firearms, transactions for firearms, finances, narcotics or establish the persons who have dominion and control over the property and vehicles searched.

### VEHICLES

-One 1996 Isuzu Trooper, CA license plate 4NVN788, registered to Javier Guillen at the above address.

-One 2003 Dodge pickup truck, CA license plate 7B27850, registered to Javier Guillen at the above address.

And other instrumentalities and evidence of violations of Title 18, United States Code, Sections 922(a)(1)(A) and 922(e) as demonstrated in this attached affidavit.

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Matthew W. Beals, being duly sworn, depose and state that:

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed for approximately six years.

2. I am currently assigned to the San Diego, California Field Office. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy; as a result of my training and experience as an ATF Agent, I am familiar with federal and state criminal laws. My primary duties have been the enforcement of federal firearm, arson and explosive laws. I have participated in numerous investigations of possession of firearms by prohibited persons and the possession of illegal firearms. I have participated in investigations that involved interstate and international firearm trafficking. I have also participated in the searches of numerous residences and businesses involving federal and state firearm violations.

3. This affidavit is in support of a search warrant for the residence of Javier GUILLEN, located at 1202 Borden Road, Space 110, Escondido, California 92026, for firearms, firearm records, papers and documents which evidence the sale, transfer or possession of firearms by GUILLEN. These records and firearms are evidence of violations of Title 18 U.S.C. § 922(a)(1)(A) – dealing firearms without a license.

4. According to ATF Form 4473 – Firearm Transaction Records that I reviewed, beginning on August 24, 2005 and continuing until October 18, 2007, GUILLEN purchased 73 firearms from Big 5 Sporting Goods, located in Escondido, Mira Mesa, Oceanside and Vista, California. GUILLEN identified his address as 1202 Borden Road, #110, Escondido, California 92026 on all of the aforementioned forms.

5. On August 24, 2005, GUILLEN purchased three Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 8145 Mira Mesa Boulevard, San Diego, California 92126. On September 4, 2005, GUILLEN retrieved the aforementioned rifles after a ten-day waiting period.

6. On September 6, 2005, GUILLEN purchased three Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On September 17, 2005, GUILLEN retrieved the aforementioned rifles after a ten-day waiting period.

7. On September 25, 2005, GUILLEN purchased three Ruger, model 10/22, .22 caliber, rifles and one Marlin, model 1894, .44 caliber, rifle from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On October 6, 2005, GUILLEN retrieved the aforementioned rifles after a ten-day waiting period.

8. On November 27, 2005, GUILLEN purchased three Ruger, model 10/22, .22 caliber, rifles and one Mossberg, 12 gauge, shotgun from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On December, 10, 2005, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

9. On November 28, 2005, GUILLEN purchased two Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On December 10, 2005, GUILLEN retrieved the aforementioned rifles after a ten-day waiting period.

10. On December 13, 2005, GUILLEN purchased three Ruger, model 10/22, .22 caliber, rifles and two Mossberg, model 500, 12 gauge, shotguns from Big 5 Sporting Goods, located at 8145 Mira Mesa Boulevard, San Diego, California 92126. On December 24, 2005, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

11. On December 19, 2005, GUILLEN purchased three Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On December 30, 2005, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

12. On June 28, 2006, GUILLEN purchased four Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On July 9, 2006, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

13. On August 29, 2006, GUILLEN purchased five Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On September 12, 2006, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

14. On September 20, 2006, GUILLEN purchased five Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On October 2, 2006, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

15. On September 24, 2006, GUILLEN purchased four Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On October 5, 2006, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

16. On October 5, 2006, GUILLEN purchased one Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On October 17, 2006, GUILLEN retrieved the aforementioned rifle after a ten-day waiting period.

17. According to Treasury Enforcement Communication System (TECS) records, on October 17, 2006, GUILLEN returned to the United States from Mexico in an unidentified vehicle.

18. On November 9, 2006, GUILLEN purchased four Ruger, model 10/22, .22 caliber, rifles and two Mossberg, model 590, 12 gauge, shotguns from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On November 20, 2006, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

19. According to TECS records, on November 24, 2006, GUILLEN returned to the United States from Mexico in a 2003 Dodge truck bearing California license plate 7B27850.

20. On November 27, 2006, GUILLEN purchased six Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On December 8, 2006, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

Attachment C – page 2 of 6

21. On December 9, 2006, GUILLEN purchased five Ruger, model 10/22, .22 caliber, rifles and one Mossberg, model 835, 12 gauge, shotgun from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On December 20, 2006, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

22. According to TECS records, on December 26, 2006, GUILLEN returned to the United States from Mexico in a 2003 Dodge truck bearing California license plate 7B27850.

23. On December 12, 2006, GUILLEN purchased five Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 1253 E. Valley Parkway, Escondido, California 92027. On December 28, 2006, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

24. According to TECS records, on December 29, 2006, GUILLEN departed the United States and traveled to Mexico in a 2003 Dodge truck bearing California license plate 7B27850.

25. On July 26, 2007, GUILLEN purchased three Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 760 Sycamore Avenue, Vista, California 92083. On August 7, 2007, GUILLEN retrieved the aforementioned firearms after a ten-day waiting period.

26. According to TECS records, on August 11, 2007, GUILLEN returned to the United States from Mexico in an unidentified vehicle.

27. On October 18, 2007, GUILLEN purchased four Ruger, model 10/22, .22 caliber, rifles from Big 5 Sporting Goods, located at 2301 Vista Way, Oceanside, California 92054. GUILLEN was eligible to retrieve the aforementioned firearms on October 28, 2007.

28. On October 24, 2007, I queried Javier GUILLEN in the California Department of Motor Vehicle (DMV) database. The DMV query identified GUILLEN's address as 1202 Borden road, #110, Escondido, California 92026.

29. On October 26, 2007, ATF Industry Operations Investigator Kathleen Fender queried Javier GUILLEN in the Federal Licensing System for a Federal Firearms License; the results were negative.

30. Javier GUILLEN has declared bankruptcy twice, in 1996 and 2005, in United States Bankruptcy Court for the Southern District of California, according records checks performed by your affiant using the Autotrack database.

31. According to computer records maintained by the credit rating company ChoicePoint, and reviewed by your affiant, Javier GUILLEN's property, the mobile home at the above-mentioned address is valued at $29,580.

32. Based on my training and experience, I know that all of the firearms described in the preceding paragraphs sell for a retail price of between $200 and $250. Therefore, the total price paid by GUILLEN for the weapons described above was between $14,600 and $19,250.

33. Based on my training and experience, I know that all of the firearms described in the preceding paragraphs are approximately 3 feet in length.

34. Based on my observations of Javier GUILLEN's trailer, I know that it is approximately 60 feet by 12 feet, for a total square footage of 720 square feet.

35. Based on my observations of Javier GUILLEN's trailer, I know that the yard of the trailer contains children's play equipment.

36. Based on inquiry made with the Big 5 stores, I know that Javier GUILLEN does not typically purchase any ammunition for the guns he purchases.

37. Based on my training and experience, I know that guns of the sort purchased by GUILLEN are not valuable as collector's items.

38. Based on my training and experience, it is my belief that (a) it would be physically impractical to store 73 long guns in a trailer of the size described above; (b) it would be unusual for a parent to store 73 long guns in a residence occupied by children; (c) it would be unusual for a person to spend, in the course of two years, more than one-half the dollar value of his home on identical, non-collectible weapons (see paragraph 39, infra); and (d) in order to be used for purposes other than collection and display, firearms require ammunition.

39. It is my belief, based on the aforementioned facts and inferences, that Javier GUILLEN's trailer does not contain all of the weapons that he has purchased, as narrated above. It is my belief that the absence of any or all of the weapons purchased by GUILLEN from his dominion and control would constitute evidence that he has transferred the weapons to other persons in violation of law.

40. Based on my training and experience, consultation with other agents from ATF—including agents with decades of experience investigating underground firearms markets— and all of the facts and opinions set forth in this affidavit, I know:

a.        It is common for persons who are involved in the unlicensed dealing of firearms to often operate from their residence, place of business and vehicles, attempting to conceal their dealings from detection by law enforcement. These persons often operate by word of mouth, advertising in the newspaper, selling firearms online, selling at swap meets, selling firearms at gun shows, selling firearms through other unlicensed dealers and consigning firearms at "friendly" licensed dealers. These persons often "turn over" their inventory of firearms on a regular basis, that is to say, continually selling and acquiring different firearms. These people do so in order to earn a profit from the sale of the firearms.

b.        It is common for unlicensed dealers to often maintain ledgers, inventory lists, acquisition and disposition records, shipping records, price tags, receipt books, records of payment for advertising, copies of prior advertising, calendars, signage, gun show flyers, and financial records to include profit/loss statements, deposit slips, and all of additional items listed in Attachment B-Items to be seized, which is incorporated herein. The affiant further knows that the type of firearms offered for sale by Javier GUILLEN are generally not collectible firearms in part because they are inexpensive and readily available from a wide range of legitimate sources. The affiant also knows that there is a specific

market for inexpensive and undocumented firearms. Specifically, this market is for persons who otherwise could not obtain a firearm through legal means because they are prohibited from legally possessing firearms or often want to conceal their acquisition of firearms because of criminal intent. This target market is able to purchase firearms from unlicensed firearms dealers without being required to complete any paperwork or background checks. This market makes it possible for an individual involved in unlicensed firearms dealing to purchase these types of firearms from a licensed dealer and other sources, mark them up in price and resell them for a profit. As a result of this market, the original purchaser stands to make a significant profit on the resale of an otherwise inexpensive and readily available firearm.

c.        The affiant knows and avers that anyone who wishes to engage in the business of acquiring and disposing of firearms for profit must obtain a Federal Firearms License (FFL) from ATF and become subject to all of the rules and Federal laws governing licensed firearms transactions. The FFL must maintain records of all firearm acquisitions and dispositions (A & D) by utilizing an A & D Book. Furthermore FFL's must require purchasers to complete an ATF Form 4473, Firearms Transaction Record, before the sale of any firearm and pass a background check as well as comply with applicable state and local laws.

d.        It is common for individuals who illegally acquire, possess and sell firearms to keep firearms and documents related to the acquisition and disposition of firearms at their residences, businesses, and in their vehicles for an indefinite period of time:

e.        It is common for persons who operate unlicensed firearms businesses to generally maintain firearms and documentation related to the business in safe locations, specifically their place of residence, vehicles, and businesses. Generally these firearms and documents are secured in gun cabinets, gun safes, or offices within the previously specified locations. Persons who operate such businesses often maintain records for many years and keep an inventory on hand to satisfy ongoing demands for firearms.

f.        It is common for individuals who possess firearms (whether lawfully or unlawfully) to possess items relating to those firearms, which includes ammunition, magazines, holsters, spare parts, cleaning equipment, periodicals, photographs of firearms and receipts for the purchase and repair of those items in their residences, businesses, and vehicles;

g.        It is also common for individuals involved in the illegal resale of firearms to store those items at places other than their residences, such as storage lockers or sheds. However, they often maintain receipts or other documentation related to those storage locations in their residences, businesses, and vehicles.

h.        It is common for individuals to travel outside California to purchase firearms that cannot be otherwise purchased in California.

i.        It is common for individuals to purchase firearms in California and transport, deliver and sell them to other individuals in Mexico.

j.        Furthermore, individuals involved in the illegal possession and transfer or sale of firearms, whether registered or unregistered, do so in large part because they do not want to be

identified by law enforcement. Therefore, these individuals go through surreptitious means to acquire, maintain, and transfer or sell firearms without complying with state and federal laws. By doing this, these individuals attempt to thwart efforts to trace firearms, making it difficult for law enforcement to identify the last known purchaser of a firearm recovered from a crime scene.

41. Consequently, based on my training, experience, and the above-mentioned facts, I believe that probable cause exists that GUILLEN possesses documents, as well as actual firearms, that confirms he is actively engaged in the business of dealing firearms without a license.

42. Additionally, based upon prior searches of premises used by individuals involved in the illegal possession and sale of firearms, I have probable cause to believe that I will find articles of personal property and documents evidencing the identity of persons occupying, possessing, residing in, owning, frequenting, or controlling the premises.

43. My training and experience indicates that persons in control of premises leave documents and items related to their identification such as photographs, cancelled mail and the like at those premises. Such items are routinely maintained in a person's premises as necessary and incident to dominion and control of such premises.

44. Therefore, based on my training, experience, and the aforementioned facts, which I believe to be true, I have probable cause to believe that the above described property or a portion thereof will be at the described premises when the warrant is served and that such items would constitute evidence of dealing firearms without a license. With the above information, I formally request the issuance of a search warrant for the aforementioned premises.

45. The statements made in this affidavit are made based on the personal observations and investigation conducted by your affiant, and information communicated or reported to your affiant during the investigation by other participants in the investigation, as the content of this affidavit indicates.

Further affiant sayeth not.

I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.

_____
MATTHEW W. BEALS
Special Agent,
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me and subscribed in my presence, in San Diego, California, on October 29, 2007.

_____
United States Magistrate Judge

Attachment C – page 6 of 6